UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JULIE BETH DOLL,

    Plaintiff,

v.                                          Case No.: 6:22-cv-316-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

Plaintiff Julie Beth Doll seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. As explained below, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.  Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.  Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo

standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C. Procedural History

Plaintiff filed an application for a period of disability and disability insurance on December 9, 2019, alleging disability beginning on November 1, 2018. (Tr. 73, 181-82). The applications were denied initially and on reconsideration. (Tr. 73, 85). Plaintiff requested a hearing, and on January 22, 2021, a hearing was held before

Administrative Law Judge Denise Pasvantis ("ALJ"). (Tr. 38-67). On May 20, 2021, the ALJ entered a decision finding Plaintiff not under a disability from November 1, 2018, through the date of the decision. (Tr. 17-28).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on December 21, 2021. (Tr. 1-6). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on February 11, 2022, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 14).

### D.  Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2023. (Tr. 20). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 1, 2018, the alleged onset date. (Tr. 20). At step two, the ALJ found that Plaintiff had the following severe impairments: "systemic lupus erythematosus." (Tr. 20). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 22).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, stand 40 minutes without interruption and 2 hours total in an 8-hour workday, walk 10 minutes without interruption and 2 hours total in an 8-hour workday, sit without limitation, and occasionally climb ramps stairs, ladders, ropes, and scaffolds, balance, stoop, kneel, crouch, crawl, and reach overhead and in any direction, handle, and finger with the bilateral upper extremities. She must avoid working around extreme heat, extreme cold, and hazards.

(Tr. 22).

At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work as an administrative secretary and elementary school teacher. (Tr. 26). At step five, the ALJ found that considering Plaintiff's age (38 years old on the alleged disability onset date), education (at least high school), work experience, and RFC, and there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 26-27). In the Vocational Interrogatories, the vocational expert found that a person with Plaintiff's limitations could perform such occupations as:

(1) election clerk, DOT 205.367-030,[1] sedentary, unskilled

(2) call out operator, DOT 237.367-014, sedentary, unskilled

(3) surveillance system monitor, DOT 379.367-010, sedentary, unskilled

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

(Tr. 26-27). The ALJ concluded that Plaintiff had not been under a disability from November 1, 2018, through the date of the decision. (Tr. 28).

## II.    Analysis

On appeal, Plaintiff raises one issue. As stated by Plaintiff, it is: whether the ALJ provided an adequate rationale in determining the persuasiveness of medical opinions pursuant to the new regulations. (Doc. 22, p. 12). Plaintiff focuses on the Functional Capacity Evaluation ("FCE) by Hector Camacho, ATC LAT and Shannon Shneyder, M.P.T., and the opinions of Varinder Kumar, M.D. (Doc. 22, p. 13, 17).

The same legal authority applies to all the opinions. The regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or gives any specific evidentiary weight to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a). Thus, an ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions given the following five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the

length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 416.920c(a)-(c). An ALJ may but is not required to explain how he considers factors other than supportability and consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. §§ 404.1513(a)(2)-(3), 416.913(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your

impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

### A.  FCE by Hector Camacho, ATC LAT and Shannon Shneyder, M.P.T.

Varinder Kumar, M.D. referred Plaintiff to Cora Rehabilitation for an FCE to define her ability to work. (Tr. 523). Hector Camacho and Shannon Shneyder conducted the four-hour testing on July 8, 2020. (Tr. 523-24). The ALJ summarized the results of the FCE:

> The results showed the claimant is able to lift up to 20 pounds for zero to 33% of the workday. She should avoid walking no more than 20 minutes an hour up to 2.5 hours; stand up to 40 minutes up to 5 hours in a given day; and sit without limitation. The F.C.E. included a final disability statement indicating the clamant would be able to stand and walk for 4 hours of an 8[-]hour day and sit for 6 hours of an 8[-]hour day. She did not require a cane for ambulation [sic] elevate a leg. She would need unscheduled breaks. She would have no loss of attention or concentration due to pain. She had no significant limits in reaching or handling with the fingers. (Ex. 10F)

(Tr. 24-25). The ALJ then evaluated the FCE and found it "most persuasive" with two exceptions:

> The undersigned finds the medical source statement expressed in the F.C.E. is most persuasive because the claimant's ability to function was actually tested over a four-hour period. It is noted [that] the statement the claimant needs to shift positions at will is inconsistent as it was noted she can sit without limitation. There is also nothing in the F.C.E. establishing the claimant would need to take unscheduled breaks because when asked during the F.C.E. if pain or other symptoms became severe enough to interfere with attention and concentration needed to perform tasks, it was noted as "never".

(Tr. 25).

Plaintiff argues the ALJ erred in finding the FCE persuasive, but failing to include: (1) an option to shift positions at will from sitting, standing, and walking; and (2) the need to take unscheduled breaks. (Doc. 22, p. 14-15). Beginning with the option to shift positions, the ALJ found that the need to shift positions at will was inconsistent with Plaintiff's ability to sit without limitation. (Tr. 25). Plaintiff argues that there is no inconsistency because during the FCE, Plaintiff was observed sitting for less than a four-hour period, which does not equal a full-time work schedule. (Doc. 22, p. 15). In the FCE, the providers found Plaintiff should have the ability to shift positions at will from sitting, standing, and walking. (Tr. 524, 547). But as the ALJ noted, within the FCE, the evaluators found Plaintiff had no limitation as to a sitting tolerance, reported Plaintiff performed testing in a seated position, and found Plaintiff could sit for "at least" six hours. (Tr. 541, 547). While Plaintiff may disagree with the ALJ's assessment, the ALJ provided valid reasons to find the need to shift positions inconsistent with and unsupported by other record evidence.

Plaintiff next argues that the ALJ erred in finding that nothing in the FCE established Plaintiff would need to take unscheduled breaks. (Doc. 22, p. 15). Plaintiff claims that the evaluators twice found Plaintiff would need to take unscheduled breaks if working full-time. (Doc. 22, p. 15). Plaintiff also cites to an FCE finding that "[r]epetitive and/or sustained activities increased pain or fatigue levels requiring positional changes and rest periods for pain management." (Tr. 523). But the ALJ found these findings and limitations inconsistent with the FCE because the evaluators reported that during the FCE, pain or other symptoms *never* become severe enough to interfere with attention and concentration needed to perform the tasks. (Tr. 25, 547). ). Plus, the evaluators were equivocal in the recommendations and accommodations section in that they found Plaintiff "may" need to take unscheduled breaks. (Tr. 524). Again, while Plaintiff may disagree with the ALJ's reasoning, the ALJ provided valid reasons to find an inclusion of an unscheduled break limitation inconsistent with and unsupported by other record evidence.

Plus, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). Even if the evidence preponderates against the Commissioner's decision, the Court must affirm if substantial evidence supports the Commissioner's decision. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021).

Lastly, Plaintiff argues that the ALJ ignored the consistency of the FCE with Dr. Kumar's opinions. Far from ignoring the FCE findings and Dr. Kumar's opinions, as discussed below, the ALJ compared Dr. Kumar's opinions with those in the FCE. (Tr. 25). Here, the ALJ's decision is supported by substantial evidence as to the evaluation of the FCE and Plaintiff's RFC, and the ALJ applied the correct legal standard.

### B. Dr. Kumar's Opinions

Plaintiff contends that while the ALJ found the FCE most persuasive, she inconsistently found Dr. Kumar's opinions not persuasive and failed to explain this finding. (Doc. 22, p. 18). Plaintiff asserts that Dr. Kumar treated Plaintiff for over twenty-six months and his opinions cited to and were supported by the FCE results. (Doc. 22, p. 18). Plaintiff emphasizes that Dr. Kumar found Plaintiff would need a job that allowed the shifting of positions at will from sitting standing, or walking, and also allowed unscheduled breaks as needed, which is consistent with the FCE. (Doc. 22, p. 19). Plaintiff then argues that the ALJ should have included these limitations (that are consistent among the FCE and Dr. Kumar's opinions) in the RFC. (Doc. 22, p. 19). Plaintiff claims that all of the ALJ's reasons for discounting Dr. Kumar's opinions are insufficient. (Doc. 22, p. 20).

In the decision, the ALJ summarized Dr. Kumar's treatment notes beginning with an August 9, 2018 visit as follows. (Tr. 24). Plaintiff had been diagnosed with

lupus a year prior, was started on Prednisone, and showed dramatic improvement on this medication. (Tr. 24). When Dr. Kumar lowered Plaintiff's Prednisone dose and tried her on other medications, Plaintiff complained of morning stiffness in her joints, fatigue, painful range of motion in elbows and shoulders, and synovitis of the wrists, MCP/PIP joints, knees, ankles, and MTP joints. (Tr. 24). But when Dr. Kumar increased Plaintiff's Prednisone and changed medications, her follow-up in September 2018 showed she was doing much better. (Tr. 24). By December 2018, Plaintiff was feeling really well, and by July 2019 her physical exam was essentially normal, and she denied complaints. (Tr. 24). Plaintiff returned a year later in May 2020, complaining that after her Prednisone dose was reduced, she had "a little more aching in the hands and shoulders and early morning stiffness." (Tr. 24). Yet Plaintiff continued to report that she exercised five days a week and her physical exam was essentially normal with full range of motions in elbows, shoulders, wrists, hips, knees, and ankles with no tenderness of the spine. (Tr. 24). Dr. Kumar completed a July 27, 2020, Lupus (SLE) Medical Source statement and an October 21, 2020 Lupus (SLE) Residual Functional Capacity Questionnaire. (Tr. 548-552, 553-558).

In the decision, the ALJ summarized Dr. Kumar's opinions in both medical source statements:

> The record also contains a medical source statement of Dr. Kumar of July 27, 2020 indicating the claimant would be able to stand for 30 minutes at a time and sit for more than 2 hours at a time for a total of 4 hours standing/walking and 6 hours

>sitting. He provided she can lift up to 10 pounds frequently and more than 10 pounds occasionally. She can occasionally, stoop, squat, climb stairs and never climb ladders. She should avoid all exposure to extreme cold, extreme heat, pulmonary irritants and avoid concentrated exposure to wetness. (Ex. 11F)
>
>Dr. Kumar completed a second medical source statement on October 21, 2020 and indicated she can sit for 2 hours at a time, stand for 30 minutes at a time, and stand/walk less than 2 hours of an 8[-]hour day and sit for less than 2 hours of an 8[-]hour day. She is able to lift and carry up to 10 pounds occasionally. (Ex. 12F)

(Tr. 25).

The ALJ found these opinions unpersuasive for these reasons:

>The undersigned finds the opinions of Dr. Kumar are not persuasive. (Ex. 11F, 12F) They are not entirely consistent with the Functional Capacity Examination (Ex. 10F) discussed above. They are not consistent with his own objective findings that indicate as of December 5, 2018 physical examinations through May 22, 2020, remained essentially normal as she had a full range of motion of the shoulders, hands, wrists, knees, ankles and feet with no synovitis. There was also no tenderness of the spine. Her condition was stable with no lupus flares. She also reported she was feeling really well and had no complaints or any joint complaints. (Ex. 4F, 7F, duplicate 9F) In addition, there is no medical evidence of worsening findings of Dr. Kumar's records to support the more restrictive limitations provided in his statement of October 21, 2020. (Ex. 12F) In addition, the F.C.E. did not address environmental limitations. There is also no established pulmonary impairment that would be exacerbated by atmospheric conditions.

(Tr. 25).

Basically, the ALJ listed four reasons to find Dr. Kumar's opinions unpersuasive. First, his opinions were not entirely consistent with the FCE. Second, his opinions were inconsistent with his own objective findings. Third, Dr. Kumar's

records did not reflect a worsening of Plaintiff's medical condition to justify the greater limitations found in the October 2020 medical source statement. And fourth, the FCE did not address environmental limitations and there was no established pulmonary impairment that would be exacerbated by atmospheric conditions. (Tr. 25). Plaintiff claims none of these reasons were sufficient to find Dr. Kumar's opinions unpersuasive. (Doc. 22, p. 20).

Plaintiff first argues that the FCE need not be entirely consistent with Dr. Kumar's opinion. (Doc. 22, p. 20). Plaintiff claims that all Dr. Kumar must do is simply support his opinion with objective evidence and supporting explanations, which he did. (Doc. 22, p. 20). Plaintiff also argues that where the FCE and Dr. Kumar's opinions agree – as to shifting positions and unscheduled breaks – the ALJ should have included these limitations in the RFC.

Under the new regulations, the ALJ is tasked with evaluating the consistency of a medical source opinion. 20 C.F.R. § 404.1520c(c)(2). The more consistent the opinion is with other medical sources, the more persuasive the opinion. *Id.* Plaintiff claims that Dr. Kumar found Plaintiff needed a job that allowed for shifting positions at will and unscheduled breaks, which was consistent with the FCE, but the ALJ failed to include these limitations in the RFC. (Doc. 22, p. 19). Plaintiff contends that in support of these limitations, Dr. Kumar cited the FCE. (Doc. 22, p. 19). While true that these findings were consistent among the FCE and Dr. Kumar's medical

source statements, as found above, the ALJ provided a clear rationale to find the limitations in the FCE for shifting positions and unscheduled breaks to be unpersuasive. (Tr. 25). These same reasons apply equally to Dr. Kumar's opinions. As to the inconsistencies among the FCE and Dr. Kumar's medical source statements, the ALJ complied with the regulations by pointing out inconsistencies between them, which supports the ALJ's finding that Dr. Kumar's medical source statements were not persuasive. Substantial evidence supports the ALJ's findings.

Plaintiff next argues that even though Dr. Kumar noted some normal examination findings, full range of motion in certain joints, and doing "reasonably well" on her current medication regimen, Plaintiff still complained of fatigue and Dr. Kumar recommended she take naps and rest during the daytime and avoid excessive physical exertion. (Doc. 22, p. 21). Plaintiff concedes that some of Dr. Kumar's examinations showed essentially normal findings, with full range of motion in certain joints and Plaintiff reportedly feeling well with no complaints. (Tr. 25). As the ALJ articulated, these findings conflict with Dr. Kumar's opinions on Plaintiff's ability to work. The ALJ clearly articulated her reasons why she found Dr. Kumar's opinions unsupported by his own treatment records and inconsistent with other record evidence. Further, as stated above and bears repeating, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782

(11th Cir. 2014). Even if the evidence preponderates against the Commissioner's decision, as Plaintiff claims here, the Court must affirm if substantial evidence supports the Commissioner's decision. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). Substantial evidence supports the ALJ's many reasons for findings Dr. Kumar's opinions unpersuasive.

### III. Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on June 2, 2023.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties